## CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement ("Agreement") dated June 19, 2020, between the Commonwealth of Pennsylvania, Department of Health (the "Department"), and Carlisle Productions, Inc. d/b/a Carlisle Events ("Carlisle Events"). The Department and Carlisle Events shall be referred to collectively herein as "the Parties," and each shall be referred to individually as a "Party."

### RECITALS

**WHEREAS**, the Secretary of Health of the Commonwealth of Pennsylvania issued an Order dated May 27, 2020 (the "Green Phase Order"), to protect the health and safety of Commonwealth residents from the threat of death or severe illness due to the Coronavirus Disease 2019 ("COVID-19");

**WHEREAS**, the Green Phase Order was amended on June 11, 2020, to add additional counties to Section 1(A) of that Order, including Cumberland County, effective at 12:01 a.m. June 12, 2020;

**WHEREAS**, Carlisle Events is a business operating within the Commonwealth of Pennsylvania, located in Carlisle, Cumberland County which at 12:01 a.m. June 12, 2020, became subject to the Green Phase Order;

**WHEREAS**, Carlisle Events scheduled Spring Carlisle, an outdoor automotive flea market, to occur on June 17 through June 20, 2020, at the Carlisle Fairgrounds, and posted extensive health and safety measures for its patrons on the event website and social media;

**WHEREAS**, on June 17, 2020, the Department commenced a lawsuit against Carlisle Events in the Commonwealth Court of Pennsylvania's original jurisdiction, seeking injunctive relief prohibiting Carlisle Events from violating the requirements of the Green Phase Order for Spring Carlisle (Docket No. 350 MD 2020) (the "Litigation");

**WHEREAS**, the Parties have reached an agreement to resolve the Litigation between them regarding Spring Carlisle.

### AGREEMENT

1.     Recitals.  The Recitals to this Agreement are incorporated as if set forth fully herein.

2.     Changes to Spring Carlisle.  Based on changes that Carlisle Events made to Spring Carlisle, including the elimination of certain event attractions such that it will now operate solely as a flea market, Spring Carlisle may continue as a flea market so long as it complies with the following:

a.     Carlisle Events shall limit occupancy in all buildings under its operation or control relating to Spring Carlisle to the lesser of 250 individuals or 50% of the maximum building occupancy;



          b.     Carlisle Events shall limit total attendance at Spring Carlisle to no more than 20,000 individuals, which is 50% of its capacity. Based on the 81 acres on which Spring Carlisle is held, one-half of capacity provides for a minimum available area of over 176 square feet per person; and,

          c.     Carlisle Events shall enforce all applicable social distancing, masking, area cleaning and hygiene requirements.

          3.     Department's Pre-Existing Rights Maintained. The Department's rights under this Agreement are in addition to any rights and remedies available to the Department either under existing laws and regulations or requirements of applicable orders issued by the Commonwealth of Pennsylvania or under any other agreements between Carlisle Events and the Department. Nothing in this Agreement shall be construed to limit or affect, in any way, the Department's ability to enforce or apply its laws, regulations or orders to Carlisle Events or to impose such remedies and sanctions on Respondent as may be authorized by applicable laws and regulations or agreements. Carlisle Events retains all rights to raise any claims and defenses to any remedy or sanction imposed by the Department.

          4.     Confidentiality. The Parties agree that the terms and conditions of this Agreement and the Parties' oral and written settlement communications are and shall remain CONFIDENTIAL. This Agreement, its terms, and the negotiations related thereto shall not be disclosed by the Parties to any person or entity, except to the extent required by law, statute, ordinance, or court order. The Parties shall not comment on the Litigation or this Agreement except to publish the statement attached as Exhibit A.

          5.     No Admission of Liability. This Agreement is a compromise of disputed claims. The Parties deny all liability to each other, and this Agreement shall not be construed as an admission of liability by any Party hereto.

          6.     Litigation. After the execution of this Agreement, the Department shall discontinue the Litigation.

          7.     Non-Admissibility. Nothing in this Agreement shall be construed to be or shall be admissible in any proceeding as evidence of or an admission by either party of any violation of any state, federal or local laws or regulations or any rules, regulations, criteria or standards of any regulatory body. This Agreement may be introduced, however, in any proceeding to enforce this Agreement.

          8.     Consultation with Counsel. It is understood and agreed by and among all Parties that they are executing this Agreement of their own free will after having received advice from counsel regarding execution of this Agreement. Each Party shall bear its own attorneys' fees, costs, and expenses associated with this Agreement.

          9.     Choice of Law. Any disputes that arise between the Parties regarding enforcement of and/or the interpretation of this Agreement shall be governed by and interpreted and construed pursuant to the laws of the Commonwealth of Pennsylvania.

10.     Binding Effect.  This Agreement is binding upon and shall inure to the benefit of the Parties hereto, their respective agents, employees, representatives, administrators, attorneys, insurers, lenders, members, officers, directors, divisions, affiliates, partnerships, partners, joint venturers, parents, beneficiaries, trustees, subsidiaries, or related corporations, assigns, heirs and successors-in-interest.

11.     Waiver.  The waiver by any Party of any breach of this Agreement shall not be deemed or construed to be a waiver of any other breach, whether prior, subsequent or contemporaneous to this Agreement.

12.     Drafting.  This Agreement has been prepared by the joint effort of the Parties.  Each Party has either had its attorney participate in the Agreement's preparation or has had the opportunity to do so.  The Parties agree that any ambiguity in this Agreement shall not be construed against any other Party by virtue of that Party having drafted the language in question.

13.     Entire Agreement of the Parties.  The Parties acknowledge that they have not made or relied upon any agreements or representations, either oral or written, expressed or implied, not embodied in this Agreement, which represents a complete integration of all prior and contemporaneous agreements and understandings of the Parties.

14.     Modification and Amendment.  This Agreement may not be modified, altered or amended in any respect except upon the express written consent of the Parties, which written consent shall be signed by all the Parties and/or by duly elected and/or appointed successors and/or assigns of the Parties.

15.     Execution in Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same document; provided, however, that this Agreement shall not be effective unless and until the Parties named herein shall all have executed it.  This Agreement may be signed and sent in Adobe PDF Acrobat format and delivered by email or electronic delivery.

16.     Authorization.  Each person signing this Agreement on behalf of an entity or person represents that he/she has been authorized by such entity or person to enter into this Agreement for the purposes contained herein.  Each Party represents, warrants and covenants that it/she/he has the authority or power to enter into this Agreement.

17.     Cooperation.  The Parties agree to reasonably cooperate fully and execute any and all documents and take any and all actions which may be required or appropriate to give force and effect to this Agreement.

IN WITNESS WHEREOF, the parties signing below, intending to be legally bound, have executed this Agreement on the dates set forth below.

[EXECUTION PAGE TO FOLLOW]

-3-

Commonwealth of Pennsylvania, Department of Health

Rachel Levine, M.D.
Secretary of Health

Date: June 19, 2020

Approved as to form and legality:

_____

Pennsylvania Department of Health
Office of Chief Counsel

Date: June 19, 2020

Carlisle Productions, Inc. d/b/a/ Carlisle Events

By: _____

Name: _____
Position:
Date: June 19, 2020

-4-

Commonwealth of Pennsylvania, Department of Health

_____

Rachel Levine, M.D.
Secretary of Health

Date: June 19, 2020

Approved as to form and legality:

Yvette M. Kostelac  Digitally signed by Yvette M. Kostelac
_____ Date: 2020.06.19 17:44:09 -04'00'
Pennsylvania Department of Health
Office of Chief Counsel

Date: June 19, 2020

Carlisle Productions, Inc. d/b/a/ Carlisle Events

By: _____

Name: _____
Position:
Date: June 19, 2020

-4-

Commonwealth of Pennsylvania, Department of Health

_____

Rachel Levine, M.D.
Secretary of Health

Date: June 19, 2020

Approved as to form and legality:

_____

Pennsylvania Department of Health
Office of Chief Counsel

Date: June 19, 2020

Carlisle Productions, Inc. d/b/a/ Carlisle Events

By: _____

Name: _HAROLD BRANDT_
Position: _CFO_
Date: June 19, 2020

-4-