```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA


   COUNTY OF BUTLER, et al.,

              Plaintiffs,

           vs.                        Civil Action No. 20-677

   THOMAS W. WOLF, et al.,

              Defendants.
                             - - - - -

       Transcript of Proceedings held on August 19, 2020,
    via telephone conference, before Honorable William S.
    Stickman IV, United States District Judge.

                             - - - - -

   APPEARANCES:

     For the Plaintiffs:     Dillon, McCandless, King, Coulter &
                               Graham
                             by Thomas W. King III, Esq.
                                Thomas E. Breth, Esq.
                                Jordan P. Shuber, Esq.


     For the Defendants:     Pennsylvania Office of Attorney
                               General
                             by Karen Mascio Romano, Esq.


     Court Reporter:         Deborah Ann Betzler, RPR, FCRR
                             700 Grant Street
                             Suite 6260
                             Pittsburgh, PA  15219


                             - - - - -

       Proceedings recorded by mechanical stenography;
    transcript produced by computer-aided transcription.
```

```
1                        P R O C E E D I N G S
2              THE COURT:  Good afternoon, counsel.
3              MR. KING:  Good afternoon, Judge.
4              MS. ROMANO:  Good afternoon, Your Honor.
5              THE COURT:  Good afternoon.  So I'm going to take
6    roll call here.  And, again, I don't know who's on the call,
7    but I give the same admonition.  If you're not one of the
8    lawyers participating, please keep your phone on mute.
9         For the plaintiff, I heard Mr. King.  Do I have anybody
10   else?
11             MR. KING:  Yes, sir.
12             MR. BRETH:  Your Honor, Thomas Breth present.
13             THE COURT:  Okay.
14             MR. KING:  And Mr. Shuber of our firm, Attorney
15   Jordan Shuber, is also with us, Judge.
16             THE COURT:  Thank you.  And is that all for the
17   plaintiffs?
18             MR. KING:  Yes, sir.
19             THE COURT:  For the defendant, Miss Romano, I heard
20   you.  Anybody else?
21             MS. ROMANO:  No, Your Honor.
22             THE COURT:  Okay.  So I heard we needed to have an
23   emergency status call on Docket No. 60, which is the second
24   motion pursuant to Federal Rule of Evidence 201 for Judicial
25   Notice of Adjudicative Facts.  What is the basis of today's
```

1   call?  My understanding is that I received this motion,
2   which appears to ask the Court to issue an order requiring
3   Dr. Levine to disclose the specific terms of a settlement
4   agreement reached regarding some car show in the York -- or
5   the Carlisle County Fairgrounds.  What's going on with this?
6           MS. ROMANO:  Your Honor, I asked for this call; so if
7   it's okay with counsel, I'll go ahead and kick us off.
8           THE COURT:  Sure thing.
9           MS. ROMANO:  Defense counsel has filed that motion.
10  The Department of Health has produced a copy of that
11  settlement agreement pursuant to the Right-to-Know Law.
12          THE COURT:  Okay.
13          MS. ROMANO:  Counsel reached out to me yesterday
14  regarding a proposed new motion to be filed with the Court
15  seeking to attach that settlement agreement as an exhibit to
16  supplement the record.
17          THE COURT:  Okay.
18          MS. ROMANO:  We don't have an objection to
19  supplementing the record with the agreement, but we cannot
20  agree to that agreement being placed on the public docket.
21  What I have proposed to counsel was sort of a generic motion
22  to supplement, agreeing we supplement the motion with this
23  agreement and we provide it to Your Honor via email or some
24  other means.
25       The agreement does contain a confidentiality clause that

1    states that the parties will keep it confidential absent
2    certain requirements under the law, such as the Right-to-Know
3    Law or a court order requiring us to produce it.  The
4    Department of Health's concern is that agreeing to it being
5    filed to a public docket could place us in violation of that
6    settlement agreement.
7              THE COURT:  Sure.  Sure.  So are you requesting that,
8    essentially, the document be filed under seal?
9              MS. ROMANO:  Essentially, yes, Your Honor.
10             THE COURT:  Okay.  Mr. King, what's the objection?
11             MR. KING:  A number, Your Honor.  So, first of all,
12   by way of background, not only did we request this and not
13   only did we file a Right-to-Know request, but a number of
14   other people filed a Right-to-Know request.  People asked the
15   attorney general for a copy of it, people asked the governor's
16   office for a copy of it, and other people other than ourselves
17   also filed Right-to-Know requests; and, in fact, those
18   Right-to-Know requests were -- and I have no idea how many
19   there were other than I know that there was more than us, and
20   those all were granted.  So we've received a letter from the
21   Pennsylvania Department of Health.
22      I also got one -- I also got a copy of this agreement
23   from a lawyer in Carlisle, Pennsylvania, by the name of Tyler
24   Beaston.  Mr. Beaston was kind enough to send it to me out of
25   the blue and said, "Attached is the PA Department of Health

1   settlement agreement with Carlisle Events, which I received
2   this morning."  So Mr. Beaston got a copy by the Right-to-Know
3   request.  And this document is in the possession of -- in all
4   candor with the Court, this document is in the possession of
5   all of my clients, and it's also in the possession of lots of
6   people all over the Commonwealth of Pennsylvania at this
7   point.
8       In addition to that, it was received under the Right-to-
9   Know Law and not under some agreement in court or in this case
10  before Your Honor.  So the letter from the Pennsylvania
11  Department of Health, Lisa Keefer, agency open records
12  officer, to Abby Pakutz, who is our -- that's P-a-k-u-t-z --
13  who is a paralegal at our firm who I asked to submit the
14  Right-to-Know request, says, "You've requested a copy of any
15  written settlement agreement in the matter of Commonwealth of
16  Pennsylvania Department of Health vs. Carlisle Productions,
17  Inc., d/b/a Carlisle Events, filed in the Commonwealth Court
18  of Pennsylvania at 350 M.D. 2020.  Your response is granted.
19  Documents responsive to your request are enclosed.  Please be
20  advised that this correspondence will serve to close this
21  record with our office as permitted by law."  So --
22          THE COURT:  Mr. King, let me ask you a question.  The
23  document that you received under the Right-to-Know Law
24  request, is it redacted, or is it just --
25          MR. KING:  Not redacted.

1                    THE COURT: It's not redacted?

2                    MR. KING: It's the complete agreement with the
3     signatures of the Secretary of Health and the general counsel
4     in the health department and a representative of Carlisle
5     Events. So I also contacted Carlisle Events, Your Honor, and
6     the lawyer for Carlisle Events is readily accessible if you'd
7     want him to get involved in this.

8                    THE COURT: I don't.

9                    MR. KING: But Dennis Whitaker. I've spoken to him,
10    and he's the lawyer for Carlisle Events, and he's authorized
11    me to say that their official position in this is that they
12    take no position as to whether this should be public or not.

13                   THE COURT: I guess -- thank you, Mr. King.
14    Ms. Romano, any dispute as to the representation of
15    Mr. King that the document that's at issue has already been
16    turned over in toto in an unredacted form pursuant to a
17    request under the Right-to-Know Law?

18                   MS. ROMANO: It has been turned over in total
19    pursuant to the Right-to-Know Law, yes.

20                   THE COURT: So if that's the case, then I guess --
21    I'm not being facetious or asking this rhetorically. I'm
22    asking this legitimately as a question. If that's the case,
23    once a document -- a public contract, essentially -- is turned
24    over under the Right-to-Know Law, doesn't that document then
25    become essentially public?

1       I mean, I know, for example, frequently media outlets
2  request documents under the Right-to-Know Law and then put
3  them on the website that you can go and look it up yourself
4  on, say, the Post-Gazette or the Pittsburgh Tribune-Review or
5  the like.  Is there any basis to keep sealed what has already
6  been released by a Commonwealth agency?
7       MS. ROMANO:  Your Honor, I'll note that we're
8  required to turn it over under the Right-to-Know Law in full.
9  We can't control what an individual does with that document
10 once it is produced to them.  You know, in effect, perhaps
11 there is no difference once it's out there.  We just don't
12 want to be in violation of the agreement by saying, "Yes, we
13 voluntarily agree to put it on a public docket," when that is
14 outside the confines of the confidentiality clause in the
15 agreement.  That clause does not say once this is put in the
16 public realm, we may then distribute it to anyone we choose.
17      THE COURT:  Understood.  Understood.
18      MS. ROMANO:  And if Your Honor ordered us to put it
19 on the docket, we'll certainly do that.
20      THE COURT:  Understood.  I know that in this court,
21 documents which generally were not public but had been turned
22 over under Right-to-Know or Sunshine Law Act requests have
23 been put on the public docket, notwithstanding even pretty
24 vehement battles as to whether they should have been turned
25 over under the request.  One case that comes to mind was

1    Harris vs. Kellog Brown and Root Services, which is a 2008 or
2    so case from this Court, as I recall.  So in that request, I
3    understand the position of both parties, but I order that --
4    well, I guess there's no motion before me, though, is there?
5        MR. KING:  No, Judge.  If I might, this is Tom King.
6    So I have a supplemental motion because our second motion
7    asking you to take judicial notice included a provision in the
8    order asking you to direct this to be delivered.  So my
9    supplemental motion, which is why we're having this call, my
10   supplemental motion says to you, Your Honor, we've got the
11   document now, it's attached, and we'd ask you to take judicial
12   notice of it.
13       THE COURT:  Okay, Mr. King.  Here's what I'm going to
14   do.  When you file your supplemental motion, I'm not going to
15   request or require, unless Ms. Romano wants to, that she file
16   a separate opposition.  I hear the opposition that she has put
17   forth on today's status conference, which is going to be on
18   the record.  The court reporter is on the line.
19       To that end, I do believe that once a document is turned
20   over to any member of the public through the Right-to-Know
21   Law, that document is fair use for any legitimate basis; and,
22   therefore, I will permit you, upon your motion, to supplement
23   the record as requested.  I will note, though, for Ms.
24   Romano's client's benefit, that I do so over the objection of
25   the Commonwealth.  That way nobody, for whatever reason,

1   legitimate or not, can criticize the Commonwealth for
2   disclosing or otherwise breaching what would have been a
3   confidentiality provision.
4       I understand their concern.  I understand the concern,
5   especially for a public entity, when it comes to criticism for
6   breaching a potential confidentiality agreement.  So I'm
7   sensitive to that, and I will make sure that the order makes
8   clear that it is the Court which is ordering it to be
9   permitted to be put on the record and not by the consent of
10  the contracting party, which in this case is the Commonwealth.
11          MR. KING:  We understand that also, Your Honor, and
12  that's why we agreed to this call.  And I understand Miss
13  Romano's duties to her client.  I would also, Your Honor, in
14  light of your comment -- I think your comments are 100 percent
15  right on.  There's a case called Pansy, P-a-n-s-y, vs. The
16  Borough of Stroudsburg, and that case can be found at 23
17  Fed.3d 772.  It's a Third Circuit Court of Appeals case, and
18  it stands for exactly the proposition you just said.
19      The court said, "A factor which a court should consider
20  in conducting the good-faith balancing test is whether a party
21  benefiting from the order of confidentiality is a public
22  entity or official.  The district court should consider
23  whether the case involves issues important to the public.  If
24  a settlement agreement involves issues or parties of a public
25  nature and involves matters of legitimate public concern, that

1    should be a factor weighing against entering or maintaining an
2    order of confidentiality."  And it talks about the threshold
3    for a government agency.
4        And, basically, the Third Circuit, the best thing that I
5    can give you to is, "This case presents another factor which
6    must be considered in the good cause balancing test.  The
7    settlement agreement to which newspapers are seeking access
8    would, but for the confidentiality order, likely be accessible
9    under the Pennsylvania Right-to-Know Act.  This case thus
10   illustrates how confidentiality orders can frustrate, if not
11   render useless, federal and state freedom of information laws.
12   When a court orders confidentiality in a suit involving a
13   government entity, as the district court in this case did,
14   there arises a troublesome conflict between the government
15   entity's interest as a litigant and its public disclosure
16   obligations, the difficult problems created by such conflict
17   that receive scholarly attention.  We hold that where it is
18   likely that information is accessible under a relevant freedom
19   of information law, a strong presumption exists against
20   granting or maintaining an order of confidentiality whose
21   scope would prevent disclosure of that information pursuant to
22   the relevant freedom of information law.  In the good cause"
23   --
24           THE COURT:  Mr. King, I understand, and I think that
25   the argument is very well made.  I take Pansy under

1   advisement.  And in this case I don't think that I hear a
2   strong argument from Miss Romano.  I've heard a good argument
3   from her, but I don't think that she's calling into question
4   Pansy or what Pansy -- what it stands for.  So, I mean, I do
5   believe that once a document is turned over under the
6   Right-to-Know Law, the document is, for all intents and
7   purposes, a public document.  That is the very nature of that
8   law.  Therefore, in this instance, I will, upon request --
9   taking into account the objection and noting the objection for
10  the record, I will grant the motion.
11          MR. KING:  Thank you, Your Honor.  We'll file the
12  motion forthwith.
13          THE COURT:  Okay.  Thank you.  Thank you,
14  Miss Romano.  Anything else?
15          MR. KING:  No.  Thank you very much, Your Honor.
16          MS. ROMANO:  No, Your Honor.
17          (The above-captioned matter was concluded.)
18                          - - - - -
19                     C E R T I F I C A T E
20          I, DEBORAH ANN BETZLER, RPR, FCRR, certify that
    the foregoing is a correct transcript from the record of
21  proceedings in the above-entitled case.
22
23
    s\ Deborah Ann Betzler                 08/21/2020
24  DEBORAH ANN BETZLER, RPR, FCRR         Date of Certification
    Official Court Reporter
25