# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COUNTY OF BUTLER,** *et al.*,<br>                   **Plaintiffs**<br><br>v.<br><br>**THOMAS W. WOLF,** in his official capacity as Governor of the Commonwealth of Pennsylvania, and **RACHEL LEVINE, MD,** in her official capacity as Secretary of the Pennsylvania Department of Health,<br>                   **Defendants** | No. 2:20-CV-677-WSS<br><br>*Complaint Filed 5/7/20* |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY SEPTEMBER 14, 2020, ORDER

Defendants, the Honorable Thomas W. Wolf and the Honorable Rachel Levine, M.D., through their undersigned counsel, move for a stay pending appeal of this Honorable Court's Order entered on September 14, 2020, granting declaratory judgment in Plaintiffs' favor. This brief is submitted in support thereof.

### RELEVANT PROCEDURAL HISTORY

On May 11, 2020, Plaintiffs commenced this action alleging that the March 19, 2020, Business Closure Orders issued by Governor Wolf and Secretary Levine, which directed all non-life-sustaining businesses in Pennsylvania to temporarily close their physical locations, were not a proper exercise of the Commonwealth's police powers and that the orders violate various rights granted to Plaintiffs under the United States Constitution. Plaintiffs further allege that the Commonwealth's reopening plan violates their rights. *Doc. 1.* Plaintiffs filed a Motion for Speedy Hearing, which was granted with respect to Counts II (Substantive Due Process), IV (Equal Protection) and V (First Amendment) of the Complaint. *Doc. 15.* The Court declined to

analyze Plaintiffs' Takings or Procedural Due Process Claims in the context of a declaratory judgment action but did not formally dismiss those claims. *Doc. 15.*

Following a two-day hearing and extensive briefing by the parties, Counts II, IV and V were submitted to the Court for a decision. On September 14, 2020, the Court issued an opinion and order granting a declaratory judgment to the political and business plaintiffs[1] and dismissing the County Plaintiffs.[2] *Doc. 79-80.* Specifically, this Court declared the following:

> (1) that the congregate gathering limits imposed by Defendants' mitigation orders violate the right of assembly enshrined in the First Amendment;
>
> (2) that the stay-at-home and business closure components of Defendants' orders violate the Due Process Clause of the Fourteenth Amendment; and
>
> (3) that the business closure components of Defendants' orders violate the Equal Protection Clause of the Fourteenth Amendment.

*Doc. 80.*

Contemporaneous with this motion, Defendants filed a Rule 54 Motion, or in the alternative, Motion to Certify Issues for Appeal to the United States Court of Appeals for the Third Circuit, and now request this Honorable Court to issue a stay of the declaratory judgment

---

[1] The term "Political Plaintiffs" refers to Mike Kelley, Daryl Metcalfe, Marci Mustello, and Tim Bonner. The term "Business Plaintiffs" refers to Nancy Gifford and Mike Gifford d/b/a Double Image Styling Salon, Prima Capelli, Inc., Steven Schoeffel, Paul Crawford t/d/b/a Marigold Farm, Cathy Hoskins t/d/b/a Classy Cuts Hair Salon, R.W. McDonald & Sons, Inc., Starlight Drive-In Inc., and Skyview Drive-In LLC. Defendants note that Plaintiff Crawford did not present any evidence in this matter.

[2] The term "County Plaintiffs" refers to the County of Butler, County of Fayette, County of Greene, and County of Washington.

pending that appeal. Doing so will allow a life-saving mitigation tool to remain in place and preserving the lives of Pennsylvanians while the legal issues are addressed on appeal.

**ARGUMENT**

"[T]ribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 844-45 (D.C. Cir.1977). *See also Robertshaw v. Pudles*, 2014 WL 1976890, at *2 (E.D. Pa. May 15, 2014). A stay is appropriate where there are novel legal issues requiring "essentially untested constitutional analysis." *First Amendment Coal. v. Judicial Inquiry & Review Bd.*, 584 F. Supp. 635, 638 (E.D. Pa. 1984).

Courts in this Circuit, and elsewhere, routinely stay cases presenting "serious" legal questions to allow appellate review. In *Prometheus Radio Project v. F.C.C.*, 03-3388, 2003 WL 22052896 (3d Cir. Sept. 3, 2003), the Third Circuit ruled that a stay was appropriate pending appeal regarding the legality of F.C.C. ownership rules. In that case, regarding a less serious subject matter than that presented here, the court ruled that, "[g]iven the magnitude of this matter and the public's interest in reaching the proper resolution, a stay is warranted pending thorough and efficient judicial review." *Id.* At *3. Here, given the difficult legal questions, as reflected by a split in authority created by this Court's decision, and the extraordinary circumstances, including that there exists a public health crisis rendering this a matter of life or death, a stay is appropriate to preserve the status quo pending thorough review by the Third Circuit. *See First Amendment Coal*, 584 F. Supp. at 638 ("If I am satisfied that there is a reasonable possibility— albeit not a probability—that I was in error, it seems to me that the equities would then shift strongly towards granting a stay"); *Combustion Sys. Servs., Inc. v. Schuylkill Energy Resources,*

3

*Inc.,* 153 F.R.D. 73, 74 (E.D. Pa.1994) ("although the Court will not concede that it committed error, this Court cannot conclude that Plaintiff has no reasonable possibility of success on the merits of its ... appeals"); *Cayuga Indian Nation of N.Y. v. Pataki,* 188 F.Supp.2d 223, 253 (N.D.N.Y. 2002) ("[B]ecause of the difficulties of the issues ... presented, it would be foolhardy to predict that there is no likelihood of success on appeal") (internal quotation marks omitted).

When ruling on a motion for stay pending appeal, the Court must balance the equities and consider the following factors: (1) whether movant will likely prevail on the merits of the appeal; (2) whether movant will suffer irreparable harm if the stay is denied; (3) whether other parties will not be substantially harmed by the stay; and (4) whether the public interest will be served by granting the stay. *Harris v. Pernsley*, 654 F.Supp. 1057, 1059 (E.D. Pa. 1987); *see also Republic of the Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). Each of these factors weigh in favor of a stay.

## I.     There is a Reasonable Possibility of Success on the Merits

"[P]redicting the likelihood of appellant's success with an appeal is a difficult inquiry for the trial judge, who already has reached the legal [and as in this matter] factual, merits of the controversy and rendered a conclusion unfavorable to the moving part[ies]." *See Robertshaw v. Pudles*, No. 11-7353, 2014 WL 1976890, at *3 (E.D. Pa. May 15, 2014). As such, "[t]he success on the merits factor does not require a court, which has just rendered its assessment and decided the merits [ ], to determine that it was probably in error; rather, what is necessary is a reasonable *possibility* that the Court was in error." *First Amendment Coal.* 584 F. Supp. at 637-38 (emphasis added). *See also In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015) (the moving party should make a showing that is "significantly better than negligible but not greater than 50%").

The novel coronavirus has raised novel legal issues. As the Court recognized in its opinion, the questions presented in this case are difficult and complex, requiring the Court to enter uncharted legal waters. This Court acknowledged that the facts were born from an unprecedented "public health emergency," and that "governments around the world have grappled with how they can intervene in a manner that is effective to protect their citizens from getting sick and, specifically, how they can protect their healthcare systems from being overwhelmed from an onslaught of cases." *Doc. 79* at 1, 65. The extraordinary nature of the COVID-19 pandemic has given rise to divergent opinions. This Court noted that a sister court within the Third Circuit has ruled incongruently on the applicable level of constitutional scrutiny attendant to review of the Governor's responses to the pandemic in *Benner v. Wolf*, __ F. Supp. 3d __, 2020 WL 2564920 (M.D. Pa. May 21, 2020), and that the Supreme Court of Pennsylvania has also ruled differently than this Court in *Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020). *Doc. 79* at 21, n. 13. The split in authority created by this Court's decision alone gives rise to a "reasonable possibility" that the Defendants may prevail on appeal to the Third Circuit, which has not yet had the opportunity to opine on the legality of the orders at issue.

The courts of this Circuit have also reached different results when considering whether the Orders violate the constitution. The Middle District has held that similar Plaintiffs are unlikely to succeed on the merits of a First Amendment claim. *Benner,* 2020 WL 2564920 at *8. The Pennsylvania Supreme Court has also determined that no First Amendment violation is present. *Friends of Danny DeVito,* 227 A.3d at 903. The Eastern District has held that there is no substantive due process right to operate a business. *Paradise Concepts, Inc. v. Wolf,* No. 20-2161, 2020 WL 5121345, *3 (E.D. Pa., Aug. 31, 2020). Once again, the split in authority

5

created by this Court's decision gives rise to a "reasonable possibility" that the Defendants may prevail on appeal.

This Court rejected the analysis in *Benner* and *Friends of Danny DeVito*, in part, because those courts relied upon the United States Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), in which the Supreme Court rejected a substantive due process challenge to a mandatory vaccination law and recognized the right of a state to "protect itself against an epidemic of disease which threatens the safety of its members.". *Id.* at 27. This Court questioned *Jacobson's* continued vitality because of the "substantial development of federal constitutional law in the area of civil liberties" since *Jacobson*. But *Jacobson* has been reiterated through the decades even as civil liberties jurisprudence has evolved. *See*, *e.g.*, *Prince v. Massachusetts*, 321 U.S. 158 (1944) (upholding state vaccination law protecting children over the religious objections of their parents because "[t]he right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death"); *see also Kansas v. Hendricks*, 521 U.S. 346, 356-57 (1997) ("The liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly free from restraint") (quoting *Jacobson*, internal brackets omitted).

This is for good reason. *Jacobson* is not only compatible with notions of individual liberty; *Jacobson* itself is aimed at protecting individual liberties. The Court's central point in *Jacobson* was that "[u]nbridled individual liberty eventually clashes with the liberty interests of others, and without some legal constraints, '[r]eal liberty for all could not exist.'" Thomas Wm. Mayo, Wendi Campbell Rogaliner, and Elicia Grilley Green, "'To Shield Thee From Diseases of the World': The Past, Present, and Possible Future of Immunization Policy," 13 J. Health & Life

6

Sci. L. 3, 9 (Feb. 2020) (quoting *Jacobson*, 197 U.S. at 26). Query whether a 59-year-old grocery store clerk with an underlying respiratory condition has any liberty in a society in which plaintiffs have an unrestrained right to attend superspreader events amidst a global pandemic.[3]

Moreover, this Court premised much of its analysis of the stay-at-home and business closures orders on the idea that the orders were suspended, noting "the suspension is not a rescission, in that the Defendants may reinstate the [ ] requirements, *sua sponte,* at any time." *Doc. 79* at 33, 79. The Court overlooked testimony that the Administration "does not plan to reinstate those phases of the reopening," *7-22 Tr.* at 38:2-4, 40:14-17, resulting in claims that are merely speculative and inappropriate for declaratory relief. *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990) (declaratory judgment is not a vehicle to obtain "an opinion advising what the law would be upon a hypothetical state of facts").[4]

Absent from the Court's analysis of the congregate limits is consideration for the manner in which COVID-19 is spread. Chief Justice Roberts summarized the scientific consensus surrounding COVID-19: "[T]here is no known cure, no effective treatment, and no vaccine. Because people may be infected but asymptomatic, they may unwittingly infect others." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, (2020). Indeed, the testimony established that COVID-19 "is a very challenging disease … to mitigate, given that individuals really incubate for about two to five days, meaning that they have been exposed to the virus,

---

[3] While this Court attempts to discard *Jacobson* – though it remains good law – the Court appears to have resurrected *Lochner v. New York*, 198 U.S. 45 (1905) – which has long since been repudiated by the High Court, *see, e.g.*, *Ferguson v. Skrupa*, 372 U.S. 726, 730 (1963) ("The doctrine that prevailed in *Lochner* … and like cases … has long since been discarded") – in holding that the business shutdown orders violated substantive due process. Respectfully, this was in error.

[4] Likewise, a "declaratory judgment is inappropriate solely to adjudicate past conduct." *Corliss v. O'Brien*, 200 F. App'x 80, 84–85 (3d Cir. 2006).

7

they're carriers of the virus, but they're not displaying symptoms at that time, … but in that initial window period they can transmit the virus without knowing." *7-22 Tr.* at 205:8-18. "In an effort to minimize the spread of COVID-19 throughout Pennsylvania, the [Defendants] sought to limit the scale and scope of personal interactions as much as possible in order to reduce the number of new infections." *Doc. 37,* ¶ 6. This was because "larger gatherings of people [ ] were responsible for what in some cases has been called mega spreading, mega spreader events." In the end, Pennsylvania adopted a 250 congregate limit—the same limit originally recommended by the CDC. *7-22 Tr., 56:4-6, 19-23.* Numerical limits serve to limit confusion, are easily understandable, and amendable to comparatively swift administration. If all congregate limits are abandoned, the virus will be free to spread like wildfire throughout the Commonwealth, resulting in an increased rate of infection and increased death. This harm cannot be undone.

As Defendants have a reasonable possibility of success on the merits, a stay is appropriate.

## II. The Defendants Will Suffer Irreparable Harm if a Stay is Denied.

Defendants are in the midst of managing and mitigating a global health crisis. As noted above, multiple lawsuits have arisen challenging Defendants' actions, and this Court's decision has created a clear split in authority. This split makes it difficult, if not impossible for Defendants to manage the pandemic effectively. Which Court is correct? Which decision is controlling? Following the holding of one court necessarily means ignoring the holding of another, and may prevent the Defendants from targeting mitigation efforts in areas of the most

dire need. This not only makes it difficult for the Administration to develop ongoing mitigation efforts, but it creates uncertainty, confusion, and danger for Pennsylvanians.[5]

Indeed, the Court's opinion tacitly recognizes the effectiveness of Defendants' policies, including the congregate limit, in mitigating the spread of COVID-19. The Commonwealth took "extraordinary emergency measures" in March, and as a result of declining infection rates the "harshest measures have been 'suspended.'" *Doc. 79* at 17. At least in part because of the collective sacrifice of Pennsylvanians, COVID-19 infection rates have remained at a simmer rather than a boil, and some normalcy of life has resumed in the state. In other words, as weeks have turned to months during this crisis, Defendants' response has not remained static and inflexible, but rather has adapted to the facts on the ground. The Court's opinion would now strip the Commonwealth's ability to continue to adjust to an uncertain future.

A stay will maintain the status quo, providing clarity for Pennsylvanians while the Third Circuit reviews this Court's decision. An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant. There is substantial equity and need for judicial protection, whether or not movant has shown a mathematical probability of success. *Prometheus,* 2003 WL 22052896 at *1 n.3. The harm that will befall Defendants—and in turn all Pennsylvanians—weighs in favor of a stay.

More critically, eliminating the congregate limits during the pendency of the appeal will result in people's deaths. 194,092 Americans have already died from COVID-19.[6] which is more

---

[5] *See, e.g.,* "Federal Judge says Gov. Wolf's lockdown 'well-intentioned' but unconstitutional," PennLive, https://www.pennlive.com/news/2020/09/federal-judge-says-gov-wolfs-lockdown-well-intentioned-but-unconstitutional.html ("The impact wasn't immediately clear").

lives lost this year than cancer will claim.[7]  Medical researchers are beginning to come to a consensus that superspreader events—events where large numbers of people gather—are driving the spread of this disease.  *See* Christie Aschwander, "How 'Superspreading' Events Drive Most COVID-19 Spread," Scientific America, https://www.scientificamerican.com/article/how-superspreading-events-drive-most-covid-19-spread1 (June 23, 2020).

One recent joint study by over 50 researchers found that a February 26, 2020 biotech conference in Boston spread COVID-19 to 20,000 people in the metropolitan area.  *See* Carl Zimmer, "One Meeting in Boston Seeded Tens of Thousands of Infections, Study Finds," New York Times, https://www.nytimes.com/2020/08/26/health/covid-19-superspreaders-boston.html (Aug. 26, 2020); Jacqueline Howard, *et al*., " Covid-19 superspreading event in Boston may have led to 20,000 cases, researcher says," CNN, https://www.cnn.com/2020/08/25/health/covid-19-superspreading-boston-study/index.html (Aug. 25, 2020).   An indoor wedding reception, attended by approximately 65 guests, is being cited as the cause of 176 cases of COVID-19 and 7 deaths—to date—in Maine.  Travis Anderson, "7 coronavirus-related deaths now connected to Maine wedding," The Boston Globe, https://www.bostonglobe.com/2020/09/15/nation/coronavirus-death-toll-linked-maine-wedding-grows-five/.  According to the CDC, a single individual with the disease infected 52 people during a two-and-a-half-hour choir practice in Washington State, resulting in two deaths.  Lea Hamner, *et al*., "High SARS-CoV-2 Attack Rate Following Exposure at a Choir Practice — Skagit County, Washington, March 2020," CDC,

---

[6]  "CDC COVID Data Tracker," CDC, https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last visited 9/16/2020).
[7]  Cancer State Facts: Common Cancer Sites, National Cancer Institute, https://seer.cancer.gov/statfacts/html/common.html (last visited 9/15/2020).

https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e6.htm (May 15, 2020); *see also* Paul Gough, "Allegheny County: 40 Covid-19 cases linked to one teen," Pittsburgh Business Times, https://www.bizjournals.com/pittsburgh/news/2020/09/02/allegheny-county-covid-19-cases.html (Sept. 2, 2020). Similarly, a single funeral in Albany, Georgia, sparked an outbreak that led to the surrounding rural county posting one of the nation's highest cumulative incidences of COVID-19. *See* Haisten Willis, *et al.*, "A funeral is thought to have sparked a covid-19 outbreak in Albany, Ga. — and led to many more funerals," Washington Post, https://www.washingtonpost.com/politics/a-funeral-sparked-a-covid-19-outbreak--and-led-to-many-more-funerals/2020/04/03/546fa0cc-74e6-11ea-87da-77a8136c1a6d_story.html (April 4, 2020).

For this reason, epidemiologists recommend that public officials "should prioritize environments and settings at high risk for [superspreading events], including closing … sites of mass gatherings while community-wide [nonpharmaceutical interventions] are implemented more broadly." Dr. Thomas Frieden, *et al.*, "Identifying and Interrupting Superspreading Events—Implications for Control of Severe Acute Respiratory Syndrome Coronavirus 2," CDC, https://wwwnc.cdc.gov/eid/article/26/6/20-0495_article (June 2020). Eliminating the Commonwealth's ability to limit large gatherings will inescapably increase the prevalence of superspreader events, leading to a larger number of people dying from this disease than otherwise would occur. As far as our medical science has come, death remains irrevocable. Because a lack of a stay will have grave consequences, the Defendants implore this Court to grant that stay.

**III.     The Issuance of a Stay Will Not Injure Plaintiffs.**

This Court recognized that the stay-at-home orders and business closure orders are currently suspended.  *Doc. 79* at 33-34, 50.  As such, a stay of the Court's order with regard to the Substantive Due Process and Equal Protection claims will not cause any injury to Plaintiffs.

A stay of the order with regard to the congregate limits will also not harm Plaintiffs.  The testimony established that the congregate limits do not apply to the regular retail operations of the business plaintiffs.  *Doc. 79* at 23.  And the political plaintiffs continue to have alternative means to campaign and communicate while the Third Circuit considers the matter.  Moreover, any harm Plaintiffs may incur during appeal is significantly outweighed by the individuals who will become sick, and may die, from attending large gatherings or as result of community spread facilitated by allowing such gatherings to proceed.

**IV.     A Stay Will Serve the Public Interest.**

As the Court noted, "Defendants undertook their actions in a well-intentioned effort to protect Pennsylvanians from the virus."  *Doc. 79* at 2.  The virus still exists and continues to infect hundreds of Pennsylvanians each day.[8]  Indeed, in just the two months since the Defendants filed their Brief in Opposition to Plaintiffs' Complaint, *Doc. 40,* nearly 55,000 new cases have been diagnosed in Pennsyvania.  Suddenly abandoning the current mitigation efforts will open the floodgates and allow the virus to freely spread throughout the Commonwealth.  And all of the progress Pennsylvania has made over the last six months will be for naught.  In contrast, a stay will allow this life-saving mitigation tool to remain in place while the Third Circuit reviews the matter.  Such efforts are clearly in the public interest.  Additionally, a stay

---

[8]   "COVID-19 Data for Pennsylvania," Pa. Dept. of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Coronavirus.aspx (last visited 9/15/20).

will allow the Third Circuit to provide legal clarity that resolves the current split within the Circuit.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that this Court grant their motion for a stay pending appeal to the United States Court of Appeals for the Third Circuit, and maintain the status quo with respect to the stay-at-home, business closure, and congregate limit orders.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By: */s/ Karen M. Romano*

KAREN M. ROMANO
Chief Deputy Attorney General
Chief, Litigation Section
Pa. Bar # 88848

Office of Attorney General
Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 787-2717
kromano@attorneygeneral.gov

DATE: September 16, 2020

# CERTIFICATE OF SERVICE

I, Karen M. Romano, Chief Deputy Attorney General, do hereby certify that I have this day served the foregoing Brief in Support of Motion to Stay, via ECF, on the following:

Thomas W. King, III, Esquire
Ronald T. Elliott, Esquire
Thomas E. Breth, Esquire
Jordan P. Shuber, Esquire
DILLON MCCANDLESS KING COULTER & GRAHAM LLP
tking@dmkcg.com
relliott@dmkcg.com
tbreth@dmkcg.com
jshuber@dmkcg.com

Robert Eugene Grimm, Esquire
SOLICITOR OF COUNTY OF GREEN
rgrimm@co.greene.pa.us

*/s/ Karen M. Romano*

KAREN M. ROMANO
Chief Deputy Attorney General

DATE: September 16, 2020